**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROMEL MARCUS and SANDREW GAUVY, | |
| Plaintiffs, | COMPLAINT |
| -against- | JURY TRIAL DEMANDED |
| THE CITY OF NEW YORK, and JOHN and JANE DOE 1–10, individually and in their official capacities as members of the New York City Police Department, | CIVIL ACTION NO._____ |
| | 42 U.S.C. § 1983 |
| Defendants. | |

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and related provisions of federal and state law to remedy the brutal, unjustified, and unconstitutional use of force by members of the New York City Police Department ("NYPD") against Plaintiffs ROMEL MARCUS and SANDREW GAUVY at Wingate Park in Brooklyn on the night of August 23, 2024.

2. Plaintiffs were at a permitted, community-run youth basketball tournament when NYPD officers—arriving in an unmarked SUV—began searching bags without cause. Plaintiffs, who were lawfully present, began recording. In response, officers escalated to violence: Mr. Marcus, a paraplegic in a wheelchair, was shoved to the ground and left there. Mr. Gauvy was punched, tased over ten times, rendered unconscious, and falsely arrested.

3. Much of the incident was captured on video by Plaintiffs and bystanders, and the footage directly contradicts the narrative given by police at the time.

1

4.  This complaint seeks redress for violations of Plaintiffs' constitutional rights, as well as damages for the severe physical and emotional injuries inflicted upon them.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' federal civil rights claims arising under 42 U.S.C. § 1983.

6.  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in Kings County, which is within the Eastern District of New York.

## PARTIES

8.  Plaintiff ROMEL MARCUS is a 41-year-old resident of Kings County, New York. He is a paraplegic and uses a wheelchair. Mr. Marcus is a respected community organizer and founder of an anti-violence youth basketball tournament held each summer in Wingate Park.

9.  Plaintiff SANDREW GAUVY is a 29-year-old resident of Kings County, New York. He is a lifelong participant and supporter of the Dunkers Delight basketball tournament and was present on August 23, 2024, to support the event and assist with cleanup.

10. Defendant THE CITY OF NEW YORK is a municipal entity organized under the laws of the State of New York. It operates the New York City Police Department and is responsible for the training, supervision, and conduct of its officers.

11. Defendants JOHN and JANE DOE 1 through 10 are NYPD officers and/or supervisors whose names and shield numbers are currently unknown to Plaintiffs. At all relevant

times, they were acting under color of state law and within the scope of their employment with the NYPD.

## FACTS

### A.  Community Event at Wingate Park

12. On August 23, 2024, Plaintiffs Romel Marcus and Sandrew Gauvy were lawfully present at Wingate Park, located in the East Flatbush neighborhood of Brooklyn, New York, for the final evening of the Dunkers Delight youth basketball tournament—a community-led, anti-violence event that takes place each summer with formal permitting from the City.

13. Mr. Marcus is the organizer of the event. Mr. Gauvy is a longtime participant and volunteer. The event was peaceful, family-oriented, and had concluded without incident earlier that evening.

14. At approximately 10:25 PM, as attendees were cleaning up the court area and preparing to leave, an unmarked black SUV drove into the park and turned off its headlights. The vehicle came to a stop in the middle of the basketball courts.

15. Six individuals, later identified as plainclothes NYPD officers, exited the vehicle. They wore no visible identification, gave no announcement of their identity, and immediately began stopping and searching attendees without explanation or probable cause.

16. These actions caused confusion and alarm among the remaining attendees. Many, including Mr. Marcus and Mr. Gauvy, began recording the scene on their cell phones—a constitutionally protected act.

### B.  Assault on Plaintiff Romel Marcus

17. Mr. Marcus, a paraplegic and wheelchair user, began live-streaming the scene as he observed one young man being tased and beaten by officers.

18. In response, an officer approached Mr. Marcus and made a mocking remark referencing Access-A-Ride, saying words to the effect of: "We'll call Access-A-Ride to get you out of here."

19. Mr. Marcus explained that he was documenting the incident and refused to leave. Without further warning, the officer forcefully shoved Mr. Marcus in his wheelchair, causing him to fall to the ground.

20. The officer caused Mr. Marcus to strike the pavement with enough force to cause injury to his right hand and shoulder, and he was unable to return to his wheelchair without assistance from bystanders. At no point did officers help him or offer medical aid.

21. Mr. Marcus was not arrested, charged, or accused of any wrongdoing. He was left on the ground by the officers and ultimately transported by ambulance to Brooklyn Methodist Hospital, where he was treated for his injuries.

22. As a result of the wrongful acts of Defendants, Mr. Marcus  suffers and continues to suffer physical pain and ongoing emotional trauma, including distress related to the public nature of the assault and the dehumanizing remarks made by NYPD personnel (e.g., the suggestion that he should be removed from the park by Access-A-Ride, a city service for individuals with disabilities).

C. **Assault and False Arrest of Plaintiff Sandrew Gauvy**

23. Plaintiff Gauvy was also recording the scene when he was approached by an officer who slapped the phone from his hand and declared, "you're resisting arrest," despite the absence of any criminal conduct or resistance.

24. Plaintiff did not know the officers, he had committed no crime, and he was engaged in no disruptive behavior.

25. Defendant officers then punched Mr. Gauvy repeatedly in the face, forced him toward the unmarked SUV, and tased him multiple times in the stomach and back. He was slammed to the pavement and lost consciousness. Screenshots of the scene are as follows:















26. Mr. Gauvy awoke handcuffed to a hospital bed, disoriented and in pain. His left hand
radiated with sharp pain up to his elbow, and he experienced chest pain, dizziness, and
shortness of breath consistent with the effects of multiple taser discharges.

27. Defendants transported him to the 71st Precinct, fingerprinted, and held him for hours before taking him  to Central Booking, where he was arraigned on false charges including disorderly conduct and resisting arrest.

28. Mr. Gauvy was released on his own recognizance. At his second court appearance, all charges were dismissed.

29. In the days and weeks following, Mr. Gauvy sought continued treatment at Downstate Hospital, where he was prescribed medication, underwent x-rays, and was advised on managing his injuries. He also experienced persistent migraines and emotional distress, including anxiety around police presence, feelings of panic, and hypervigilance.

30. Mr. Gauvy did not resist, threaten, or interfere with police in any way. His conduct throughout was peaceful and lawful.

**D.  Municipal Liability and Pattern of Constitutional Violations**

31. Upon information and belief, the actions of the officers involved in the assaults and arrest of Plaintiffs were not isolated incidents, but were consistent with a pattern and practice of unconstitutional behavior by NYPD officers operating in Kings County and throughout the City of New York.

32. The New York City Police Department has a long and well-documented history of using excessive force against civilians, particularly during encounters involving Black and Brown residents, individuals recording police activity, and people with disabilities.

33. At all times material , Defendant officers received inadequate and negligent training and supervision related to de-escalation, proportionality in the use of force, and proper protocol for interactions with individuals lawfully filming police conduct.

34. The City of New York, through the NYPD, has been placed on notice of these deficiencies through prior lawsuits, CCRB complaints, judicial findings, and investigative reports, yet has failed to take corrective action sufficient to prevent further constitutional violations.

35. Despite multiple prior lawsuits, public reports, and formal investigations into NYPD's excessive force practices, particularly in communities of color, the City of New York has failed to revise or enforce adequate disciplinary or supervisory protocols.

36. Upon information and belief, the NYPD does not provide adequate training to officers on interacting with individuals with disabilities, including wheelchair users and those with visible physical impairments.

37. Officers are not properly instructed on safe, lawful or respectful interactions with disabled civilians, nor on de-escalation techniques or accommodations required under federal law.

38. These training failures constitute deliberate indifference to the constitutional and statutory rights of disabled persons and were a direct cause of the injuries suffered by Plaintiff Marcus.

39. The unconstitutional conduct described herein occurred as a direct result of the City's failure to train, supervise, and discipline its officers, and reflects a policy of deliberate indifference to the rights and safety of the public.

40. As such, the Defendant City of New York is liable under, inter alia, <u>Monell</u> for the injuries suffered by Plaintiffs.

## CAUSES OF ACTION

### COUNT I
### Excessive Force
### 42 U.S.C. § 1983
### Plaintiffs v. Defendants

41. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

42. Defendants JOHN and JANE DOE Officers used objectively unreasonable and excessive force against Plaintiffs Romel Marcus and Sandrew Gauvy, in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

43. Neither Plaintiff posed a threat, resisted arrest, or engaged in any unlawful conduct. The use of force—including pushing a paraplegic man from his wheelchair and repeatedly tasing and punching an unarmed civilian—was gratuitous, punitive, and unconstitutional.

44. As a direct and proximate result, Plaintiffs suffered physical injury, pain and suffering, emotional trauma, and loss of liberty.

### COUNT II
### False Arrest and Unlawful Imprisonment
### 42 U.S.C. § 1983
### Plaintiff Gauvy v. Defendants

45. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

46. Plaintiff Gauvy was seized, detained, and arrested without a warrant, probable cause, or legal justification.

47. Defendants fabricated probable cause by claiming Mr. Gauvy resisted arrest, despite video evidence and eyewitness accounts to the contrary.

48. Mr. Gauvy was held overnight and arraigned on false charges that were later dismissed. This seizure violated his rights under the Fourth and Fourteenth Amendments.

49. As a direct and proximate result, Plaintiffs suffered physical injury, pain and suffering, emotional trauma, and loss of liberty.

**COUNT III**
**Failure to Intervene**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

50. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

51. Defendants JOHN and JANE DOE Officers had an affirmative duty to intervene to prevent the use of excessive force and the false arrest of Plaintiffs.

52. Each officer present had a realistic opportunity to intervene but failed to do so, thereby allowing constitutional violations to occur unchecked.

53. As a direct and proximate result, Plaintiffs suffered physical injury, pain and suffering, emotional trauma, and loss of liberty.

**COUNT IV**
**Cruel and Unusual Punishment**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

54. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

55. Upon information and belief, the attach on Plaintiffs by Defendants was sadistic in nature and the cause of serious permanent physical and psychological injuries upon Plaintiffs.

56. Defendants had no good faith belief that their use of force was necessary to maintain or restore order. Rather, Defendants maliciously intended to cause grievous bodily injury to Plaintiffs.

57. Defendants use of force to punish Plaintiffs was objectively harmful enough to serious physical injury to Plaintiffs.

58. In so doing, Defendants violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishments.

59. As a direct and proximate result, Plaintiffs suffered physical injury, pain and suffering, emotional trauma, and loss of liberty.

**COUNT V**
**Retaliation for Protected Conduct**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

60. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

61. Plaintiffs were engaged in constitutionally protected activity—recording police officers in a public space—when they were targeted and attacked.

62. The use of force against Plaintiffs, and, in Gauvy's case, arrest, were done in retaliation for this activity, in violation of the First and Fourteenth Amendments.

63. As a direct and proximate result, Plaintiffs suffered physical injury, pain and suffering, emotional trauma, and loss of liberty.

**COUNT VI**
**Deprivation of Substantive Due Process**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

64. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

65. Defendants' conduct herein was an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to barred by the Fourteenth Amendment.

66. As a result of the foregoing, Plaintiffs were deprived of their liberty and right to substantive due process, causing emotional and physical pain and suffering.

67. As a result of the foregoing, Plaintiffs are entitled to compensatory damages in an amount to be fixed by a jury and are further entitled to punitive damages against the individual

defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT VII**
**Violation of the Equal Protection Clause**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

68. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

69. Defendants subjected Plaintiffs to excessive force because of the Plaintiffs' race or otherwise failed to intervene to prevent such treatment committed in their presence by other NYPD officers.

70. As a result of the foregoing, Plaintiffs were deprived of their rights under the Equal Protection Clause of the United States Constitution.

71. As a result of the foregoing, Plaintiffs are entitled to compensatory damages in an amount to be fixed by a jury and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT VIII**
**<u>Monell</u> Liability**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

72. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

73. Defendant City of New York is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for injuries caused by the policies, practices, and customs of the NYPD, including but not limited to:

    a. Tolerating and failing to discipline excessive force;

    b. Tolerating and failing to discipline false arrest/unlawful imprisonment;

15

  c. Failing to train officers on de-escalation and proportionality;

  d. Failing to discipline unconstitutional retaliation against civilians filming police;

  e. Deliberate indifference to known patterns of unconstitutional conduct.

74. These policies and practices were the moving force behind the constitutional violations Plaintiffs suffered.

75. As a result, Plaintiffs have suffered damages.

**COUNT IX**
**Supervisory Liability**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants**

76. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

77. The supervisory defendants personally caused Plaintiffs' constitutional injuries by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

78. As a result of the foregoing, Plaintiffs are entitled to compensatory damages in an amount to be fixed by a jury and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT X**
**Violation of the Sixth Amendment – Right to Be Informed of Charges**
**42 U.S.C. § 1983**
**Plaintiff Gauvy v. Defendants**

79. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

80. Plaintiff Gauvy was arrested, detained, and subjected to excessive force without being informed of the reasons for his seizure or the charges against him until many hours later.

81. This unlawful detention and lack of notice violated Mr. Gauvy's rights under the Sixth and Fourteenth Amendments to be informed of the nature and cause of the accusation.

82. As a direct and proximate result, Mr. Gauvy suffered loss of liberty, emotional distress, and physical injury.

**COUNT XI**
**Deliberate Indifference to Medical Needs – Eighth and Fourteenth Amendments**
**42 U.S.C. § 1983**
**Plaintiff Marcus v. Defendants**

83. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

84. Plaintiff Marcus, a paraplegic, was shoved from his wheelchair and left on the pavement without assistance, despite obvious medical need. He was visibly injured and unable to return to his wheelchair without help.

85. At no time did officers provide or summon medical assistance or accommodations. Their failure to act reflects deliberate indifference to Plaintiff's serious medical needs.

86. This conduct violated Plaintiff Marcus's rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and from government indifference to serious medical needs.

87. As a direct and proximate result, Mr. Marcus suffered loss of liberty, emotional distress, and physical injury.

**COUNT XII**
**Violation of the Americans with Disabilities Act and Rehabilitation Act**
**ADA and Section 504 of the Rehabilitation Act**
**Plaintiff Marcus v. Defendants**

88. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

89. Plaintiff Romel Marcus is a qualified individual with a disability under the ADA and Section 504 of the Rehabilitation Act. He is paralyzed from the waist down, uses a wheelchair, and requires daily catheterization and other medical accommodations. His disability substantially limits one or more major life activities, including walking, standing, lifting, toileting, and self-care. These limitations are known, visible, and were clearly apparent to the officers involved at all relevant times.

90. Defendants discriminated against Mr. Marcus based on his disability by mocking him, refusing to accommodate his mobility limitations, and shoving him to the ground.

91. The City of New York failed to train officers to interact appropriately with individuals with disabilities, failed to make reasonable accommodations, and subjected Mr. Marcus to exclusion from a public space and public service.

92. Mr. Marcus was excluded from a public space and denied access to a public service on the basis of his disability, in violation of federal law.

93. The City of New York, through its agents, denied Plaintiff Marcus the benefits of public services and access to public spaces because of his disability, failed to accommodate his needs, and demonstrated deliberate indifference to his rights under federal law.

94. These acts violate Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

95. As a result, Plaintiff has suffered damages.

**COUNT XIII**
**Assault and Battery**
**Under New York Law**
**Plaintiffs v. Defendants**

96. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

97. Defendants intentionally and unlawfully touched and struck Plaintiffs without consent or justification.

98. The physical violence used—punches, tasings, and shoving—constitutes assault and battery under New York State law.

99. As a result, Plaintiffs suffered physical pain, emotional distress, and psychological injury.

**COUNT XIV**
**False Arrest and Imprisonment**
**Under New York Law**
**Plaintiff Gauvy v. Defendants**

100.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

101.     Plaintiff Gauvy was unlawfully arrested, detained, and imprisoned without probable cause, in violation of New York State law.

102.     The charges were ultimately dismissed. At all times, Gauvy was lawfully present and engaging in protected conduct.

103.     As a result, Plaintiff has suffered damages.

**COUNT XV**
**Intentional Infliction of Emotional Distress**
**Under New York Law**
**Plaintiffs v. Defendants**

104.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

105.     Defendants' conduct was extreme, outrageous, and intended to cause harm to Plaintiffs or showed reckless disregard for their well-being.

106.     The mockery, violence, and humiliation endured by Plaintiffs, especially Mr. Marcus as a wheelchair user, shocks the conscience and entitles them to relief.

107.     As a result, Plaintiffs have suffered damages.

## COUNT XVI
## Negligent Infliction of Emotional Distress
## Under New York Law
## Plaintiffs v. Defendants

108.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

109.     As a result of the aforementioned extreme and outrageous conduct that upon

information and belief was negligently inflicted by Defendants, Plaintiffs suffered severe

emotional and/or mental distress including but not limited to emotional distress,

depression, stress, anxiety, humiliation, embarrassment, tension, and serious permanent

personal injuries of mind as well as special damages and/or diminution of their

enjoyment of life, and physical injuries, all of which are permanent in nature.

## COUNT XVII
## Negligence, Negligent Hiring, Training and Supervision
## Under New York Law
## Plaintiffs v. Defendants

110.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

111.     The Defendant City of New York owed Plaintiffs a duty to hire, retain, train,

supervise, and discipline its police officers in a manner that would prevent foreseeable

harm, including the unjustified use of force, false arrest, and unlawful treatment of

civilians, particularly those with disabilities.

112.     The City was negligent in hiring officers who lacked the temperament, training,

and judgment required to carry out police duties without violating the rights and safety of

members of the public.

113.     The City was negligent in failing to properly train its officers on, *inter alia*: how

to interact with individuals lawfully recording police activity; how to identify and

accommodate people with disabilities, including wheelchair users; how to assess when

force is necessary and proportionate; and how to recognize and respect the civil rights of civilians at peaceful events.

114.    The City was negligent in failing to supervise its officers during the events at Wingate Park, allowing plainclothes NYPD officers to, *inter alia*: approach a peaceful scene without identifying themselves; search individuals without legal justification; use excessive and punitive force on unarmed civilians; and engage in mocking, dehumanizing conduct without consequence.

115.    The City was negligent in failing to intervene or take corrective measures despite clear warning signs and opportunities to prevent harm. These include, *inter alia*: prior lawsuits and CCRB complaints regarding excessive force, false arrest, and misconduct during public gatherings; internal knowledge of past officer misconduct in the same precincts and neighborhoods; and the absence of any supervisory response to the obviously unlawful conduct of the officers involved.

116.    The City failed to enforce policies that would have prevented the abuse of Plaintiffs, including protocols for de-escalation, use of force, disability accommodations, and body camera usage. No officer wore a visible badge or nameplate, and none provided identification at any point, further contributing to the harm.

117.    The City also negligently failed to train officers in appropriate conduct when confronted with protected First Amendment activity, such as filming police in a public space—an area of settled law that officers are expected to understand.

118.    As a result of the City's negligence, including its failure to properly hire, train, supervise, and discipline its officers, Plaintiffs were subjected to foreseeable and

preventable harm, including physical injury, emotional distress, false arrest, and humiliation.

119.    Defendants JOHN and JANE DOE officers breached their duty of care to Plaintiffs by acting unreasonably under the circumstances. These officers failed to exercise the level of caution, restraint, and professional judgment required of NYPD personnel when interacting with civilians at a peaceful, permitted community event.

120.    These officers were negligent in initiating physical contact without warning or justification, using force disproportionate to any perceived threat, and escalating a non-violent situation into a chaotic and injurious confrontation. Their actions directly resulted in the physical injury of Plaintiff Marcus, a paraplegic who was shoved to the ground, and Plaintiff Gauvy, who was punched, tased, and falsely arrested.

121.    The Doe officers further breached their duty of care by failing to provide or summon medical aid for Mr. Marcus after he was thrown from his wheelchair and injured. Their failure to act—despite visible signs of physical distress and an obvious disability—was negligent and in violation of basic standards of decency and NYPD policy.

122.    The Doe officers' negligent conduct also included their collective failure to de-escalate the situation, to identify themselves, to respect Plaintiffs' rights to record police activity, and to intervene to stop each other's misconduct. Their inaction and affirmative misconduct were both direct and proximate causes of Plaintiffs' injuries and emotional trauma.

123.    Defendants tolerated and failed to discipline excessive force against Plaintiffs.

124.     Defendants tolerated and failed to discipline false arrest and unlawful

imprisonment of Plaintiffs;

125.     Defendants failed to train officers on de-escalation and proportionality;

126.     Defendants failed to discipline unconstitutional retaliation against civilians

filming police;

127.     Defendants were deliberately indifferent to known patterns of unconstitutional

conduct.

128.     Defendants used excessive force against Plaintiffs.

129.     As a result of this negligence, Plaintiffs suffered foreseeable and preventable

harm.


**COUNT XVIII**
**Violation of New York State Constitution**
**Article I §§ 6, 11, 12**
**Plaintiffs v. Defendants**

130.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

131.     The conduct described above also violates Plaintiffs' rights under the New York

Constitution, including the rights to be free from excessive force, false arrest, and

unequal treatment.

132.     As a result, Plaintiffs have suffered damages.


**COUNT IXX**
**Malicious Prosecution**
**Under New York Law**
**Plaintiffs v. Defendants**

133.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

134.     The Defendants commenced or continued of a criminal proceeding by the

defendants against the plaintiff,

135.     The termination of the proceeding was in favor of the Plaintiffs

136.     At all times material, there was an absence of probable cause for the criminal

proceeding.

137.     At all times material, Defendants acted with actual malice as set forth herein.

**COUNT XX**
**False Imprisonment**
**Under New York Law**
**Plaintiffs v. Defendants**

138.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

139.     The defendants intended to confine the plaintiffs.

140.     The plaintiffs were conscious of the confinement and did not consent to it.

141.     The confinement was not otherwise privileged"

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, Romel Marcus and Sandrew Gauvy respectfully request that the

Court enter judgment in their favor and against Defendants as follows:

142.     Compensatory damages in an amount to be determined at trial for physical

injuries, pain and suffering, emotional distress, loss of liberty, and other non-economic

harm;

143.     Punitive damages against the individual defendants in an amount to be determined

at trial to deter such conduct in the future;

144.     Declaratory relief stating that the conduct of the Defendant officers, as described

herein, violated Plaintiffs' constitutional rights;

145.     Injunctive relief requiring the City of New York to adopt and implement adequate

policies, procedures, and training to prevent future violations of the rights of individuals

with disabilities and the rights of individuals lawfully recording police activity;

146.    Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, the ADA, the

Rehabilitation Act, and any other applicable provision of law;

147.    Pre- and post-judgment interest as allowed by law;

148.    Any and all such other and further relief as this Court may deem just, proper, and

equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Dated: June 12, 2025
New York, New York

               **DEREK SMITH LAW GROUP, PLLC**

By:

        IAN M. BRYSON, ESQUIRE
        450 7th Avenue, 30th Floor
        New York, NY 10123
        ian@dereksmithlaw.com
        *Attorneys for Plaintiffs*